IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSZITA CARPENTER | : | CIVIL ACTION |
| | : | NO. 11-460 |
| v. | : | |
| | : | |
| TIMOTHY F. GEITHNER | : | |

O'NEILL, J.                                                                                    June 4, 2012

## MEMORANDUM

Now before me are defendant Timothy F. Geithner's motion for judgment on the pleadings or, alternatively, for summary judgment and to dismiss for lack of subject matter jurisdiction and the responses thereto of plaintiff Roszita Carpenter, proceeding pro se. For the reasons that follow I will grant defendant's motion.

## BACKGROUND

Ms. Carpenter worked in Philadelphia as a mail and file clerk for the Internal Revenue Service – a part of the United States Department of the Treasury. She was removed from employment on June 13, 2003. Dkt. No. 17-1, EEOC Decision at 3, ¶¶ 2-3. On October 11, 2003, Ms. Carpenter filed a formal complaint with the Equal Employment Opportunity Commission, alleging the IRS (i) discriminated against her on the basis of an unidentified mental disability; and (ii) retaliated against her based upon her earlier involvement in the EEO process. Dkt. No. 17-2. In 2004, Ms. Carpenter filed a related lawsuit in this Court in which she alleged disability discrimination. Carpenter v. Snow, No. 04-1126 (E.D. Pa.); see also Dkt. No. 17-1, EEOC Decision at 3, ¶ 7. Ms. Carpenter settled that action with the Treasury Department in 2005. Id. at ¶ 9. As a part of the settlement, Ms. Carpenter agreed to dismiss her complaint with

prejudice and the Treasury Department agreed to (i) pay her $15,000; (ii) rescind her removal; and (iii) change her removal to a voluntary resignation for health reasons.  Id..

On August 20, 2008, Ms. Carpenter applied to the U.S. Office of Personnel Management for a Federal Employment Retirement System disability retirement.  Id. ¶ 10.  The OPM operates as a separate federal agency from the Treasury Department.  On September 22, 2008, OPM notified Ms. Carpenter that her application for disability retirement was untimely because she did not submit the application within one year after her separation from Federal service.  Dkt. No. 17-3; see also Dkt. No. 17-1 at 3, ¶ 11.  In its notification letter, OPM asked Ms. Carpenter to provide it with information relating to her mental competency after her separation from the IRS so that it could determine whether it could waive the limitation period for filing for FERS disability retirement.  Dkt. No. 17-3.  Ms. Carpenter responded to OPM's request with documents.  Dkt. No. 17-4.  On October 30, 2008, after a review of those documents, OPM informed Ms. Carpenter that she did not meet the timeliness requirement and dismissed her application.  Id.  Ms. Carpenter apparently requested reconsideration of OPM's determination. See Dkt. No. 24 at 64 (email from Carol Cook at OPM to Rosita Carpenter stating that "[y]our request for reconsideration (below) is accepted).  In response, OPM explained that "[i]nformation in support of your reconsideration request needs to show how your medical condition kept you from filing for disability retirement from OPM until 2008," id., and that "[w]e will additionally need medical records from your physician."  Id. at 63.

In September 2008, Ms. Carpenter began making multiple telephone calls and sending emails to the IRS's Employee Resource Center and one of its Cincinnati-based Retirement

Benefits Specialists, Richard Klein.[1]  Dkt. No. 17-5 ¶¶ 9, 10(2)[2], 14, 18 .  Mr. Klein's job was to provide OPM with health and life insurance forms for individuals approved for disability retirement.  Id. ¶¶ 7, 20.  Although Ms. Carpenter had not been approved for disability retirement, she contacted Mr. Klein repeatedly, each time requesting that he provide her with medical records from her IRS Official Personnel File.  Id. ¶¶ 10, 14.  Her OPF did not contain any medical records, Mr. Kline never possessed or had access to Ms. Carpenter's medical records and he informed Ms. Carpenter of this.[3]  Id. ¶¶ 9, 12, 14.  At OPM's request, in May 2009 Mr. Klein provided OPM with Ms. Carpenter's OPF and her 2005 settlement agreement with the Treasury Department – the only documents relating to Ms. Carpenter to which he had access.  Id. ¶¶ 9, 10(1); Dkt. No. 17-1 at 3-4, ¶¶ 13-18.

---

[1]     In his declaration, Mr. Klein explained that

> Roszita had filed no less than 15 tickets (though her number of calls to the ERC far exceeded that) and the ERC called me to see what was going on.  I explained the situation in that OPM was waiting for Rozsita to submit her medical documentation and that I could not do any thing [sic] until OPM was able to move forward with her case.  At the time, due to the excessive amount of calls Roszita was making, in a teleconference with ERC officials, . . . the ERC personnel decided they would no longer open any more tickets for Roszita, but rather refer her directly to me, to which I certainly agreed.

Dkt. No. 17-5 at ¶ 11.

[2]     As there are two paragraphs bearing the number 10 in this document, I will refer to them as 10(1) and 10(2).

[3]     In his declaration, Mr. Klein explained that "I never had any medical documentation; I only had her OPF and a copy of the settlement agreement concerning her 2003 removal. . . .  I tried to tell her, but to no avail, that I did not have her medical records.  I did suggest that, since she could not locate the records, to go to her doctor again and re-request the medical records."  Dkt. No. 17-5 at ¶ 9.

On May 17, 2009 Ms. Carpenter left Mr. Klein a voicemail message in which she said:

> I just got finished praying for you.  I received insurmountable
> evidence of what you are doing to me.  I'm giving you the
> opportunity to save yourself and family.  To save yourself, your
> child and your family.  I don't want your family to lose everything.
> I got proof that will stand up as to what you've been doing to me.
> All those ERC2 representatives that you've been telling to lie –
> they're not going to lie for you anymore.  They're ready to throw
> you under the bus.  I got proof that will stand up in court and it will
> make you lose your job and give me the right to sue you.  This is
> not a threat.  I got God in my life.  I'm not angry.  I feel sorry for
> you – I pity you.  You can save yourself and family today.

Dkt. No. 17-1 at 4, ¶ 19; see also Dkt. No. 17-5 at ¶ 16.  Mr. Klein shared Ms. Carpenter's

voicemail with his supervisors who forwarded it to the Treasury Inspector General for Tax

Administration (TIGTA).  Dkt. No. 17-1 at 4, ¶ 20.

TIGTA assigned two of its special agents to investigate whether the message to Mr. Klein

was a threat.  Id. at 4, ¶ 21.  The special agents questioned Ms. Carpenter about her message at

her home on May 29, 2009.  Dkt. No. 17-6 at ¶ 2; see also Dkt. No. 17-1 at 4, ¶ 22.  Upon

listening to the message, Ms. Carpenter confirmed that she had left it, but denied that she

intended the message as a threat to Mr. Klein.  Dkt. No. 17-6 at ¶ 2.  Ms. Carpenter was informed

that if she were to threaten a federal government employee, she could be criminally prosecuted.

Id.; see also Dkt. No. 17-1 at 5, ¶¶ 23-25.

On June 12, 2009, Ms. Carpenter "requested pre-complaint processing of a complaint of

discrimination" from the EEOC.  Dkt. No. 17-1, EEOC Decision at 1.  Ms. Carpenter asserted a

claim that she was discriminated against on the basis of her age, disability, and/or in reprisal for

her prior EEO protected activity when the Department of the Treasury "failed to provide

necessary information resulting in the . . . denial of [her] application for disability retirement"

and when Treasury Agents were "sent to her home to intimidate her into withdrawing her EEO complaint of discrimination." Id. at 2.  The Treasury Department filed a "Motion for a Decision Without a Hearing." Id. at 1.  Ms. Carpenter did not respond to the motion. Id.  The EEOC considered the record evidence and determined that the Treasury Department "did not discriminate against" Ms. Carpenter. Id. at 7.  On January 5, 2011, the Department of the Treasury entered a final order in which it "determined that it w[ould] fully implement the Administrative Judge's finding of no discrimination."  Dkt. No. 17-1, Dep't of the Treasury Final Order.

Ms. Carpenter then sought to file the instant action against Mr. Geithner, filing a request for in forma pauperis status on January 24, 2011.  Dkt. No. 1.  The Court granted Ms. Carpenter's request on January 28, 2011 and her complaint was docketed.  Dkt. Nos. 2, 3.

In her form complaint, Ms. Carpenter asserts claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.  Dkt. No. 3, p. 1.  She checked boxes to indicate that the discriminatory conduct of which she complains is: (1) "failure to accommodate my disability"; (2) "failure to stop harassment"; and (3) "retaliation." Id.  She alleges continuing discrimination beginning in 2005 and further claims that defendant Geithner discriminated against her based upon her religion, color, gender and age (over 40 at all relevant times).  In support of her claim she states only the following facts:

> My medical record[s] were withheld since 2000 by the IRS[.]
> Agents were sent to my home.  Wed cam [sic] were in my home,
> employment, were withheld from me.  I was harass[ed], and
> tormented daily.  My family fell apart.

Id. at p. 3 ¶ E.  Ms. Carpenter checked a box stating that she seeks any available injunctive relief

or damages.  She has subsequently stated that her claim is "in the amount of one million dollars."
Dkt. No. 24.  With respect to exhaustion of her administrative remedies, Ms. Carpenter's
complaint avers only that she filed an administrative complaint in March 1999.  Dkt. No. 3 at
p. 4, ¶ III.A.  It does not reference her June 12, 2009 request to the EEOC for pre-complaint
processing of a complaint of discrimination.

        After filing her complaint, Ms. Carpenter filed motions for appointment of counsel, Dkt.
No. 4, "for relief of harassment, relief of regulation," Dkt. No. 5, "to intervene Rule 24," Dkt.
No. 6, and for an "Order."  Dkt. No. 7.  Her motions were denied without prejudice on March 14,
2011.  Dkt. No. 8.  Ms. Carpenter noticed an appeal from the Court's March 14, 2011 Order on
April 4, 2011.  Carpenter v. Sec'y of Treasury, No. 11-1836 (3d Cir.).  In the Court of Appeals
for the Third Circuit, Ms. Carpenter sought, inter alia, to move to transfer her case to the District
of Columbia where OPM is based.  On June 30, 2011, the Court of Appeals denied Ms.
Carpenter's motions and dismissed her appeal for lack of appellate jurisdiction.  Ms. Carpenter
filed a petition for rehearing en banc which was denied on September 26, 2011.

        On behalf of defendant Geithner, the United States accepted service of Ms. Carpenter's
complaint on April 20, 2011.  Dkt. No. 11.  Defendant Geithner answered Ms. Carpenter's
complaint on July 13, 2011 after the dismissal of her appeal.  Thereafter Ms. Carpenter renewed
her motion for appointment of counsel and has moved for certain other relief.  Dkt. Nos. 19, 21.

### STANDARD OF REVIEW

        A party may move for judgment on the pleadings "[a]fter the pleadings are closed – but
early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate
only if "the movant clearly establishes that no material issue of fact remains to be resolved and

that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221

(3d Cir. 2008), citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290–91 (3d Cir.

1988).

   In certain circumstances the Court may treat a motion for judgment on the pleadings as

one for summary judgment pursuant to Federal Rule of Civil Procedure 56(c):

> If, on a motion for judgment on the pleadings, matters outside the
> pleadings are presented to and not excluded by the court, the
> motion shall be treated as one for summary judgment and disposed
> of as provided in Rule 56 and all parties shall be given reasonable
> opportunity to present all material made pertinent to such a motion
> by Rule 56.

Fed.R.Civ.P. 12(d).  Defendant's motion relies on a number of documents outside of "the

allegations in the complaint, exhibits attached to the complaint, matters of public record, and

documents that form the basis of a claim." Brown v. Daniels, 128 Fed. App'x 910, 913 (3d Cir.

2005).  In particular, defendant relies on certain exhibits filed with its answer, including the

declaration of Richard Klein.  Dkt. No. 17-6.  Conversion of defendant's motion into one for

summary judgment is appropriate in this case.

   Before converting a motion for judgment on the pleadings, a district court must "give[ ]

notice and an opportunity to oppose summary judgment." Otis Elevator Co. v. George

Washington Hotel Corp., 27 F.3d 903, 910 (3d Cir. 1994), citing Davis Elliott Intern. v. Pan Am.

Container, 705 F.2d 705, 707–08 (3d Cir. 1983).  I find that Ms. Carpenter received adequate

notice of the possibility of conversion to summary judgment.  See Chase Manhattan Bank v.

BCE Mobile Commc'ns Inc., 722 F. Supp. 2d 505, 2010 WL 2757502 (D. Del. 2010) (finding

that appropriate notice had been "established where outside materials were attached to the

Motion for Judgment on the Pleadings [and] there ha[d] been ample time to present evidence in opposition"). Defendant's motion is framed as a motion for judgment on the pleadings or, alternatively, for summary judgment. Further, plaintiff has had notice and an opportunity to challenge the facts set forth in the documents relied on by the defendant in its motion as they were filed along with its answer. Plaintiff responded to defendants motion by, inter alia, seeking to enter into evidence the EEOC's investigative file. (Dkt. No. 24.)

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

Ms. Carpenter claims that the Treasury Department discriminated against her by not sending to OPM medical records from her OPF.  But Ms. Carpenter has not produced sufficient evidence to raise a genuine dispute as to whether there were, in fact, medical records in her OPF. The only purported evidence of allegedly discriminatory conduct in the EEOC investigative file Ms. Carpenter filed in response to defendant's motion are Ms. Carpenter's unsupported assertions and conclusory allegations that the IRS's Employee Resource Center withheld her medical records.  See, e.g., Dkt. No. 24 at 15 (setting forth Ms. Carpenter's unsupported claim that "Richard Klein held my medical record for over 1 year and did not process my disability retirement"); and Dkt. No. 24 at 57 (claiming without support that Richard Klein had "check[ed] out" her medical records from the National Archive Center on September 22, 2008).  To the contrary, the EEOC investigative file submitted by Ms. Carpenter includes a number of communications documenting Mr. Klein's efforts to explain to Ms. Carpenter that OPM did not have possession of her medical records and that she was required to produce medical documents to OPM so that OPM could consider her disability application.  See, e.g.. Dkt. No. 24 at 49, 53,

69.  The Treasury Department supplied OPM with Ms. Carpenter's entire Official Personnel File, including her 2005 settlement agreement with the Department.  See Dkt. No. 17-5 at ¶ 11.  There were no medical records in her OPF.  See id. at ¶¶ 9, 10(1), 12, 13, 14.  Defendant cannot be said to have discriminated against Ms. Carpenter for not having provided her with documents that it did not have.  Plaintiff must present more than just "bare assertions, conclusory allegations or suspicions" to show the existence of a genuine issue of material fact and withstand defendant's motion.  See Celotex Corp., 477 U.S. at 325.  This she has not done.

Ms. Carpenter also contends that the Treasury Department retaliated against her in May 2009 by sending TIGTA agents to her home to investigate the voicemail message she left for Mr. Klein.  To make out a claim for post-employment retaliation, Ms. Carpenter must show that she engaged in protected activity, that the Treasury Department had influence over a subsequent employment-related decision and that the Treasury Department made a retaliatory use of that influence to the detriment of Ms. Carpenter's employment opportunities.  Boandl v. Geithner, 752 F. Supp. 2d 540, 567 (E.D. Pa. 2010), citing Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 200-201 (3d Cir. 1994); see also Nelson v. Upsala Coll., 51 F.3d 383, 387 (3d Cir. 1995) ("there should be some connection between the allegedly retaliatory conduct and an employment relationship").  Ms. Carpenter has not alleged that the TIGTA investigation harmed her employment opportunities in any way and thus has not established that there is a genuine dispute with respect to her claim for post-employment retaliation.  Further, the TIGTA agents had ample reason to investigate Ms. Carpenter's call to Mr. Klein given the content of her voicemail message to him.

Finally, even if Ms. Carpenter's complaint can be liberally construed as asserting a claim

-10-

against OPM for its denial of her application for disability retirement benefits, the Court does not

have subject matter jurisdiction over such a claim.[4]  First, in order to appeal OPM's

determination, Ms. Carpenter must have first applied to the Merit Systems Protection Board.  See

5 U.S.C. §§ 7701(a), 8347(c) and 8347(d)(1).  She does not allege that she has done so.  Further,

even if she had, jurisdiction over an appeal from a determination by the MSPB lies exclusively

with the United States Court of Appeals for the Federal Circuit.  See 5 U.S.C. § 7703(b)(1); 28

U.S.C. § 1295(a)(9); see also Brown-Cummings v. Sullivan, No. 88-0752, 1989 WL56377, at*2

(E.D. Pa. May 25, 1989).  I will dismiss Ms. Carpenter's complaint without prejudice to her

ability, if any, to pursue a claim against OPM for its denial of her application for disability

retirement benefits before the Merit Systems Protection Board and the United States Court of

Appeals for the Federal Circuit.

 An appropriate Order follows.

---

 [4] Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for
lack of subject matter jurisdiction.  "A motion under Rule 12(b)(1) may be treated as either a
facial attack on the complaint or a factual challenge to the court's subject matter jurisdiction."
Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000).  Because defendant's
motion presents a facial attack on Ms. Carpenter's claim, I assume that her allegations are true
and consider whether "the pleadings fail to present an action or claim within the court's
jurisdiction." Hall v. Easton Area Sch. Dist., No. 10–7603, 2012 WL 526287, at *2 (E.D.Pa.
Feb.17, 2012), citing Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.
1977).  Plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged.
Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).